**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAY 6 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ELLEN KEATES, | No. 20-16015 |
| Plaintiff-Appellant, | D.C. No. 2:15-cv-01270-NVW |
| v. | |
| MICHAEL KOILE, individually as an employee with the State of Arizona Child Protective Services; and KIMBERLY PENDER, individually as an employee with the State of Arizona Child Protective Services, | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, Senior District Judge, Presiding

Submitted May 4, 2021**
Portland, Oregon

Before: W. FLETCHER and FRIEDLAND, Circuit Judges, and BLOCK,***

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\** The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*** The Honorable Frederic Block, United States District Judge for the Eastern District of New York, sitting by designation.

District Judge.

Appellant Ellen Keates ("Keates") appeals the District Court's denial of her motion for judgment as a matter of law pursuant to Rule 50 after a jury rendered a verdict in favor of Appellees Michael Koile ("Koile") and Kimberly Pender ("Pender"), who were sued individually as employees of Arizona's Child Protective Services ("CPS"). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

The following facts were established at trial. On May 20, 2013, Keates took her thirteen-year-old daughter A.K. to see a pediatrician. While being examined by Dr. Susan Stephens, A.K. disclosed that she "had attempted to hurt herself." At some point in time, Keates entered the examination room, and Dr. Stephens became concerned about Keates's behavior because she discounted the possibility that A.K. would engage in self-harm and spontaneously mentioned that A.K. had been the victim of sexual abuse. Consequently, Dr. Stephens instructed Keates to take A.K. to the Phoenix Children's Hospital to be evaluated by a psychiatrist. Dr. Stephens informed Keates that if A.K. was not checked in within thirty minutes, she would contact CPS. At the hospital, Behavioral Health Crisis Counselor Randall Call ("Call") concluded that it would be unsafe to release A.K. from the hospital after Keates initially refused to stay home with A.K. to make sure that she did not harm herself.  Call instead determined that A.K. should be transferred to an

2

inpatient psychiatric environment as soon as a bed became available and contacted CPS.

The next morning, May 21, 2013, Pender assigned Koile to investigate on behalf of CPS. Upon arriving at the hospital, Koile spoke to A.K. and hospital staff. Keates was not at the hospital. Koile attempted to contact Keates by phone several times without success. That same morning, a social worker told Koile that Aurora Behavioral Health ("Aurora") would have a bed available for A.K. at 3:00 P.M. that day. At the time of these events, it took an average of five days to obtain a warrant to take custody of a child. Koile took A.K. into custody and transferred her to Aurora in the early afternoon without obtaining a warrant.

Keates then brought this action, claiming Koile and Pender violated her constitutional rights when A.K. was seized without a warrant.[1] At trial, the jury returned a verdict in Defendants' favor. In doing so, it answered three interrogatories, finding that Koile and Pender (1) had "reasonable cause to believe [A.K.] was in imminent danger of serious bodily injury within the time it would have taken to obtain a court order authorizing the removal," and (2) "pursue[d] avenues of investigation that were reasonable considering all the circumstances," and (3) that "the scope and degree of the interference with familial association

---

[1] A.K. asserted claims in the initial complaint. Before trial, A.K. reached the age of majority and voluntarily withdrew her claims.

[was] reasonably necessary to avert the imminent danger."

In denying the renewed motion for judgment as a matter of law, the District Court held that "the verdict and the jury interrogatories established both (1) that Defendants did not violate Plaintiff's constitutional rights and (2) that, if they did, Defendants are entitled to qualified immunity because they did not violate law that was clearly established in the circumstances of this case."

We review the District Court's denial of a motion for judgment as matter of law *de novo*. *See In re Bard IVC Filters Prod. Liab. Litig.*, 969 F.3d 1067, 1077 (9th Cir. 2020). We ask whether the evidence, construed in the light most favorable to the nonmoving party, "permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006). We hold that the jury's verdict that there was no constitutional violation was reasonable and supported by the record. Ample evidence supported a finding that the officials "ha[d] reasonable cause to believe that [a] child [was] likely to experience serious bodily harm in the time that would be required to obtain a warrant." *Rogers v. Cnty. of San Joaquin*, 487 F.3d 1288, 1294 (9th Cir. 2007). Consequently, we need not address the issue of qualified immunity.

**AFFIRMED.**

4